ORDERED UNSEALED on 06/12/2026 s/ MariaFujit

SEALED
s/ MF

FILED
Jun 11 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY s/ DDE DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

September 2025 Grand Jury

UNITED STATES OF AMERICA,

v.

BLANCA CARDENAS (1),
aka Blanca Cardenes,
aka Blanca Cesena,
aka Blanca Lopez,
aka Blanca E. Cardenas,
aka Blanca Estela Cesena Vargas,
aka Blanca Estela Cesena,
aka Blanca Estela Lopez,
RAQUEL PASILLAS (2),
aka Raquel Cardenas,

Defendants.

Case No. '26 CR2236 AGS

I N D I C T M E N T

Title 18, U.S.C., Sec. 1349 - Conspiracy to Commit Health Care Fraud; Title 18, U.S.C., Sec. 1347 - Health Care Fraud; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Secs. 982(a)(7) and 982(b) - Criminal Forfeiture

The Grand Jury charges, at all times material:

INTRODUCTORY ALLEGATIONS

1. BLANCA CARDENA, aka Blanca Cardenes, aka Blanca Cesena, aka Blanca Lopez, aka Blanca E. Cardenas, aka Blanca Estela Cesena Vargas, aka Blanca Estela Cesena, aka Blanca Estela Lopez ("CARDENAS" or "defendant CARDENAS"), was a practicing certified nurse practitioner from July 9, 2009, until April 10, 2025, within the Southern District of California, and elsewhere. CARDENAS is the owner and Chief Financial

Officer of Mobile Care Medical Providers, LLC and B&R Wound Care, Inc., located at 3111 Camino Del Rio North, Suite 452, San Diego, CA 92108.

2. RAQUEL PASILLAS, aka Raquel Cardenas ("PASILLAS") is the Director, President, Secretary, and Treasurer of B&R Wound Care, Inc. PASILLAS does not possess any medical license.

3. Mobile Care Medical Providers, LLC ("Mobile Care") provides mobile home medical care services, with a primary practice location of 3111 Camino Del Rio N, Suite 452, San Diego, CA 92108. California Secretary of State records show that Mobile Care was established on October 23, 2023, as a business providing mobile medical care.

4. B&R Wound Care, Inc. ("BRWC") provides mobile health services. Arizona Secretary of State records show that BRWC was established in or around April 2022 as a for-profit corporation to provide mobile health care needs. As of November 30, 2023, Arizona Secretary of State records show that BRWC was administratively dissolved. Despite its dissolved status, BRWC continued to provide mobile health services in the Southern District of California.

THE MEDICARE PROGRAM

5. The Medicare program ("Medicare") was established under Title XVIII of the Social Security Act. Medicare was a federal health care program providing benefits to persons who are sixty-five years of age or older, certain younger people with disabilities, and people with End-Stage Renal Disease. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who receive benefits under Medicare were referred to as Medicare "beneficiaries." Medicare was a health care benefit program as defined by 18 U.S.C. § 24(b).

6. Medicare had four parts: hospital insurance (Part A), medical insurance that covered among other things, medical items and services provided by physicians, nurse practitioners, group practices, and other qualified health care providers that were medically necessary and ordered by licensed medical doctors or qualified health care providers (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

7. Physicians, nurse practitioners, group practices, and other health care providers (collectively, "providers") that provided items and services to beneficiaries were able to apply for and obtain a National Provider Identifier ("NPI") number. A provider that received a Medicare NPI number was able to file claims with Medicare to obtain reimbursement for items and services provided to beneficiaries.

8. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name; (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the ordering, referring, or rendering physician or other health care provider.

9. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions. Medicare paid for claims only if the items and services were medically reasonable, medically necessary

for the treatment or diagnosis of the patient's illness or injury, accurately documented, and provided as represented to Medicare.

10. Medicare pays for services and supplies that are provided directly by health care practitioners, or those items and services furnished "incident to" a physician's or other practitioner's services. This means that when the services of certain practitioners, such as nurses or nurse practitioners, are provided in an auxiliary fashion under the direct personal supervision of a physician, they may be covered as incident to services, billed under the physician's NPI, and reimbursed at 100% of the physician fee schedule allowable amount.

11. Other practitioners including non-physician practitioners ("NPPs"), defined as nurse practitioners and physician's assistants, may also initiate "incident to services", by supervising a practitioner with a lesser scope of practice, such as nurses, and billing under the NPPs own NPIs and receiving reimbursement at 85% of the physician fee schedule allowable amount. Thus, NPPs are in the unique position of being either the auxiliary personnel operating incident to a physician's plan of care, or an initiating provider setting the plan of treatment and supervising a practitioner with a lesser scope of practice.

12. To qualify as "incident to services", the service must be: (a) furnished under the physician's direct supervision; (b) an integral, though incidental, part of the physician's professional service in the course of diagnosis or treatment of a patient; and (c) the physician (or nonphysician practitioner) must initiate treatment and see the patient at a frequency that reflects his or her active involvement in the case. This includes both new patients and established patients being seen for new problems.

13. In the context of services provided in a patient's home or a residential institution, direct supervision means a physician is physically present in the home while the auxiliary personnel perform the service; phone availability is insufficient. In the office setting, the physician must be physically present in the same office suite.

14. During the recent COVID-19 pandemic and public health emergency, Medicare relaxed the direct supervision requirements for "incident to" billing and allowed providers to perform incident to services if they were immediately available by real-time audio-visual telecommunications. The relaxation of the direct supervision requirements continued through 2025.

15. With the exception of "incident to services" rendered in a non-facility setting, the actual rendering provider of medical services must submit claims to Medicare for services rendered under that rendering provider's NPI, and not under any other Medicare provider's NPI.

16. Medicare Part B covered chronic wound medical care. Chronic wounds are characterized by their inability to heal or demonstrate a significant reduction in wound size within 30 days. If a chronic wound fails to respond to standard wound care (debridement, proper dressing changes, infection prevention, compression or offloading), a skin substitute can be utilized to increase the likelihood of complete healing.

17. Skin substitutes and services for their application are covered under Medicare Part B when they are reasonable and medically necessary for the treatment of the beneficiaries' condition. One type of skin substitute used by wound care providers is an amniotic allograft, which is a skin substitute made from human placental or amniotic fluid cells. These allografts were applied over open wounds to assist with

wound closure or skin growth. Medicare reimbursed providers for certain allografts furnished to Medicare beneficiaries only if the allografts were medically reasonable, medically necessary for the treatment or diagnosis of the beneficiary's illness or injury, accurately documented, and provided as represented to Medicare. Documented conservative treatment is necessary for at least four weeks before Medicare covers the application of allograft skin substitutes.

## Count 1

(18 U.S.C. § 1349)

Conspiracy to Commit Health Care Fraud

18. Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated by reference.

19. Beginning in or around April 2024, and continuing through at least through October 2024, within the Southern District of California and elsewhere, defendants BLANCA CARDENA, aka Blanca Cardenes, aka Blanca Cesena, aka Blanca Lopez, aka Blanca E. Cardenas, aka Blanca Estela Cesena Vargas, aka Blanca Estela Cesena, aka Blanca Estela Lopez and RAQUEL PASILLAS, aka Raquel Cardenas, conspired with each other and with others to knowingly, willfully, and intentionally agree to commit the following offenses against the United States:

a. To knowingly and willfully, with the intent to defraud, execute a material scheme to defraud Medicare, a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, promises, and omissions and concealments of material facts, money and property owned by, and under the custody and control of,

Medicare, in connection with the delivery of and payment for health care benefits, items, and services, in violation of 18 U.S.C. § 1347.

Purpose of the Conspiracy

20. It was the object of the conspiracy for the defendants and others to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare that were ineligible for reimbursement; and (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of CARDENAS, PASILLAS, and their co-conspirators, and to further the fraud.

Manner and Means of the Conspiracy

21. The manners and means by which the defendants CARDENAS and PASILLAS, and others, sought to accomplish the objects of the conspiracy and scheme to defraud, included the following:

a. In or around April 7, 2023, CARDENAS certified to Medicare as Mobile Care's owner and CEO, that she would comply with all of Medicare's laws, regulations, and program instructions and that she would not knowingly present or cause to be presented a false or fraudulent claims for payments to Medicare.

b. In or around April 22, 2024, CARDENAS certified to Medicare as BRWC's CEO, that she would comply with all of Medicare's laws, regulations, and program instructions and that she would not knowingly present or cause to be presented a false or fraudulent claims for payments to Medicare.

c. On December 18, 2023, Defendant CARDENAS pleaded guilty in the Southern District of California to a felony.

d. On March 11, 2024, CARDENAS was sentenced on the felony conviction to 12 months and 1 day in custody, together with three years of supervised release. At the time of her sentencing, Defendant CARDENAS was out on bond.

e. On or about April 24, 2024, CARDENAS self-surrendered to the Bureau of Prisons and began serving her custodial sentence at Victorville Federal Correctional Institution.

f. Defendant CARDENAS finished serving her custodial sentence and was released from custody on or about October 28, 2024.

g. During the six months of Defendant CARDENAS' incarceration, due to her incarceration, CARDENAS was unavailable to provide medical services herself as a nurse practitioner to Mobile Care and BRWC Medicare beneficiaries and patients.

h. During the six months of Defendant CARDENAS' incarceration, due to her incarceration, CARDENAS also was not immediately available to provide any direct supervision to qualified medical providers employed by Mobile Care and BRWC in order to be able to submit claims to Medicare under her NPI for "incident to services" as the rendering provider.

i. Notwithstanding this, Mobile Care and BRWC continued submitting claims to Medicare for mobile medical services, primarily for expensive wound care and the application of allograft skin substitutes to Medicare beneficiaries, under Defendant CARDENAS' NPI and for services purportedly provided by CARDENAS where CARDENAS was listed on claims

submitted to Medicare as the rendering provider of the medical services.

j. During those six months of Defendant CARDENAS' incarceration, Defendant PASILLAS, having no medical licenses or certifications qualifying her to provide medical services, in fact provided medical services to Medicare beneficiaries, and CARDENAS and PASILLAS, through Mobile Care and BRWC billed Medicare for those services, including expensive wound care and the application of allograft skin substitutes to Medicare beneficiaries.

k. For dates of service between April 25, 2024, and on or about October 29, 2024, Mobile Care and BRWC submitted to Medicare a combined total of claims totaling approximately $9,506,239, and Medicare paid Mobile Care and BRWC approximately $5,512,969 on those claims, where Defendant CARDENAS was listed as the rendering provider of the billed services.

l. CARDENAS and PASILLAS used the illegal proceeds of their fraud scheme to fund their lifestyle and divert the Medicare proceeds of the fraud for their personal use and benefit, including the cash withdrawal of more than $4,720,621 and monthly payments into CARDENAS' and PASILLAS' personal bank accounts in amounts between $8,200 and $20,645, all during the time of CARDENAS' incarceration.

All in violation of Title 18, United States Code, Section 1349.

Counts 2 through 10

Health Care Fraud

(18 U.S.C. §§ 1347 & 2)

22. Paragraphs 1 through 17 of the Introductory Allegations of this Indictment are re-alleged and incorporated by reference.

23. Starting no later than April 24, 2024, and continuing through at least October 29, 2024, within the Southern District of California and elsewhere, defendants BLANCA CARDENA, aka Blanca Cardenes, aka Blanca Cesena, aka Blanca Lopez, aka Blanca E. Cardenas, aka Blanca Estela Cesena Vargas, aka Blanca Estela Cesena, aka Blanca Estela Lopez, and RAQUEL PASILLAS, aka Raquel Cardenas, knowingly and willfully devised and intended to devise a material scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of, and payment for, health care benefits and services.

24. Paragraphs 20 and 21 of this Indictment are realleged and incorporated by reference as more fully describing Defendants' scheme to defraud.

25. On or about the dates set forth below, within the Southern District of California and elsewhere, defendants CARDENAS and PASILLAS knowingly and willfully executed the scheme to defraud described above by submitting, and causing to be submitted, a claim for reimbursement from Medicare, for the following beneficiaries, for the following items, in the following amounts, with each claim constituting a separate count:

//

//

| Count | Approx. Date of Service | Name of Beneficiary | Claim Number/ Claim Line | Procedure Code/Procedure Description | Approx. Billed Amount of Claim | Approx. Paid Amount of Claim |
|---|---|---|---|---|---|---|
| 2 | 4/26/2024 | E.S. | 551124121173720/ Line 3 | Q4191 – Restorigin, Per Square Centimeter | $8,000.00 | $4,820.03 |
| 3 | 4/26/2024 | J.O. | 551124121173770/ Line 2 | Q4191 – Restorigin, Per Square Centimeter | $32,000.00 | $19,280.13 |
| 4 | 4/26/2024 | K.M. | 551124121173780/ Line 4 | Q4191 – Restorigin, Per Square Centimeter | $64,000.00 | $38,560.26 |
| 5 | 5/2/2024 | D.B. | 551825041062580/ Line2 | 11042 – Removal of Skin and Tissue, 20.0 Sq Cm or Less | $242.07 | $97.60 |
| 6 | 5/2/2024 | E.S. | 551824129074980/ Line 2 | Q4191 – Restorigin, Per Square Centimeter | $8,000.00 | $4,820.03 |
| 7 | 5/17/2024 | D.B. | 551825041062520/ Line 2 | 11042 – Removal of Skin and Tissue, 20.0 Sq Cm or Less | $242.07 | $97.60 |
| 8 | 6/15/2024 | C.C. | 551124170217670/ Line 3 | Q4191 – Restorigin, Per Square Centimeter | $96,000.00 | $57,840.38 |
| 9 | 9/11/2024 | T.S. | 551125041905640/ Line 4 | 11045 – Removal of Skin and Tissue, Each Additional 20.0 Sq Cm or Less | $718.00 | $287.96 |
| 10 | 10/29/2024 | C.C. | 551824323053670/ Line 1 | 99349 – Residence Visit for Established Patient with Moderate Level of Medical Decision Making, Per Day, If Using Time, at least 40 Minutes | $222.21 | $89.11 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

Forfeiture Allegations

(U.S.C. §§ 982(a)(7) & 982(b))

26. Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated by reference as well as the allegations contained in Counts 1 through 10 for the purposes of alleging forfeiture to the United States.

27. Upon conviction of one and more of the offenses alleged in Counts 1 through 10 of this Indictment and pursuant to Title 18, United States Code, Section 982(a)(7), defendants BLANCA CARDENA, aka Blanca Cardenes, aka Blanca Cesena, aka Blanca Lopez, aka Blanca E. Cardenas, aka Blanca Estela Cesena Vargas, aka Blanca Estela Cesena, aka Blanca Estela Lopez, and RAQUEL PASILLAS, aka Raquel Cardenas, shall forfeit to the United States any property, real and personal, which constitutes and is derived, directly and indirectly, from gross proceeds traceable to the commission of the offenses.

28. If, as a result of any act or omission of defendants BLANCA CARDENAS, aka Blanca Cardenes, aka Blanca Cesena, aka Blanca Lopez, aka Blanca E. Cardenas, aka Blanca Estela Cesena Vargas, aka Blanca Estela Cesena, aka Blanca Estela Lopez, and RAQUEL PASILLAS, aka Raquel Cardenas, any of the above-described forfeitable property, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty;

//

//

//

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendants up to the value of the property described above subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 982(a)(7) and 982(b).

DATED: June 11, 2026.

[redacted]

ADAM GORDON
United States Attorney

By: ______________________
BLANCA QUINTERO
Assistant U.S. Attorney