ADAM GORDON
United States Attorney
BLANCA QUINTERO
Assistant United States Attorney
California Bar No. 196889
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7118
Email: Blanca.Quintero2@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BLANCA CARDENAS (1),<br>aka Blanca Cardenes,<br>aka Blanca Cesena,<br>aka Blanca Lopez,<br>aka Blanca E. Cardenas,<br>aka Blanca Estela Cesena Vargas,<br>aka Blanca Estela Cesena,<br>aka Blanca Estela Lopez,<br>RAQUEL PASILLAS (2),<br>aka Raquel Cardenas,<br><br>Defendants. | Case No.: 26-CR-02236-AGS<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT CARDENAS' MOTION FOR RECONSIDERATION OF THE COURT'S DETENTION ORDER** |

## I. INTRODUCTION

The Court should deny Defendant's motion for reconsideration. First, Defendant has not presented new facts – unknown to her at the time of the detention hearing – that have a material bearing on release conditions regarding flight to warrant reopening the detention hearing. Second, Defendant still presents a serious risk of flight, and no condition

or combination of conditions will reasonably assure her appearance as required. She is facing a lengthy period of incarceration if convicted; the strength of the evidence is particularly strong; and as set forth on the face of the indictment, the Defendant brazenly committed the instant offense while in custody serving a federal custodial sentence from a bulk cash smuggling conviction from the Southern District of California. Accordingly, the Court should deny the motion.

## II. BACKGROUND AND STATEMENT OF CASE

On June 11, 2026, a federal grand jury in the Southern District of California returned a ten-count indictment charging Defendants Blanca Cardenas and Raquel Pasillas with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and nine substantive counts of health care fraud, in violation of Title 18, United States Code, Section 1347. Defendants were also charged with criminal forfeiture.

The charges against Defendants involved the billing of fraudulent claims to Medicare for medical services, primarily the application of allograft skin substitutes and chronic wound care, through two mobile medical service companies owned and/or operated by Defendants. During the commission of the charged offense, Defendant Cardenas, a nurse practitioner at the time, was serving a federal custodial sentence on a prior bulk cash smuggling conviction out of the Southern District of California, and conspired with her daughter, Defendant Pasillas, to fraudulently bill Medicare for services provided by Defendant Pasillas when Defendant Pasillas had no medical license to provide the medical services, and the purported rendering provider listed on the claims submitted to Medicare, was Defendant Cardenas who was in federal custody. During the six months of Defendant Cardenas' federal custodial time, Defendants billed Medicare in excess of $9.5 million, and Medicare paid more than $4.5 million.

Defendant Cardenas was arrested on June 13, 2026. At Defendant Cardenas' detention hearing, the Court ordered her detained and Defendant remains in custody. The complete transcript of Defendant's detention hearing is attached to this opposition. Exh. 1 – June 18, 2026, Transcript of Detention Hearing.

## III. LEGAL STANDARD

Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Courts in this district have considered a motion for reconsideration of their detention order under 18 U.S.C. § 3145(b). *See, e.g., United States v. Bojorquez*, 20-cr-867-CAB-MSB, 2020 WL 4732067, at *1 (S.D. Cal. Aug. 14, 2020); *United States v. Long Ngoc Tran*, 21-cr-1109-H-AHG, 2021 WL 2186234, at *1 (S.D. Cal. May 27, 2021). Courts may decide the motion on the papers and documents before them without a hearing. *United States v. Garciduenas-Escamilla*, 19-cr-4899-GPC-AHG, 2020 WL 2306606, at *1 (S.D. Cal. May 8, 2020) (citing *United States v. Martinez-Tomas*, No. 20-50095 (9th Cir. April 30, 2020).

Under 18 U.S.C. § 3142(f), "[t]he [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonable assure the appearance of such person as required and the safety of any other person and the community."

"Courts interpret this provision strictly." *United States v. Knight*, 452 F. Supp. 3d 938, 945 (D. Nev. 2020); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1206-07 (C.D. Cal. 1999). "The rule requires the movant, whether prosecutor or defendant, establish: (1) that information now exists that was not known to the movant at the initial detention hearing, and (2) the new information is material to release conditions regarding flight or dangerousness." *Knight*, 452 F. Supp. 3d at 945. "Generally, once a detention hearing is reopened, it is reopened to allow the court to receive any information, within reason, not submitted at the initial hearing, allowing the new information to be considered in context." *Id.* "If the information was available at the time of the original hearing, the detention hearing need not be reopened." *Id.* (citations omitted).

## IV. DISCUSSION

### A. Defendant has not Provided New Facts – Unknown to Her at the Time of the Detention Hearing – Material to Release Conditions Regarding Flight to Reopen the Detention Hearing

Defendant has not met her initial burden to show new and material facts to reopen the detention hearing under Section 3142(f).

First, Defendant has not addressed or shown how the information in the motion for reconsideration was "not known to the movant" at the time of the detention hearing in October 2023. *Id.* At the time of the hearing, Defendant highlighted in detail her ties to the United States, including that she is a United States citizen and has "lived in the same general area for more than 48 years. . . and has aunts, cousins, uncles, all of whom live in that same area…" Exh. 1 at 9:23-25 thru 10-1. Defendant simply has not shown how any information in the motion was unavailable to her at the time of the hearing. Accordingly, she has not met the plain language of Section 3142(g) to reopen the detention proceedings.

Second, all the arguments and the information proffered in Defendant's motion for reconsideration was presented at the hearing. There simply are no new facts now known to Defendant that were unknown to her at the time of the detention that would be material to release conditions regarding flight to reopen the detention hearing. For example:

- **Strong Ties to the United States**

Defendant argues in her motion that she has strong ties to the United States and outlines in detail Defendant's background and ties to the Southern District of California, starting with when she immigrated to the United States at the age of four, graduating from Point Loma High School, obtaining her college degree, raising her children (including co-defendant Pasillas) mostly in San Diego County. Mot. for Recons., ECF No. 41 at 3:3-16. At the hearing, Defendant presented arguments about Defendant's strong ties to the United States and San Diego, family members in attendance at the hearing, and some familial connections in Chula Vista. Ex. 1 at 7:14-21; 8:13-14; 9:22-10:1. Information about Defendant's ties to Southern California was contained in the U.S. Pretrial Report as well. And while Defendant mentions additional background information in its motion not shared

at the detention hearing, it is information that was available to Defendant at the time of the hearing, including some of it mentioned in the U.S. Pretrial Report (education, etc). Also, at the detention hearing, the United States acknowledged Defendant's history and characteristics, namely that she was a United States citizen with strong ties to this district. Ex. 1 at 4:13-15. However, Defendant also has strong ties to Mexico, including her ex-husband and mother, bank accounts in Mexico under her name, property, potential plans to move to Mexico. Ex. 1 at 4:15-25-5:1-12; 10:2. Nevertheless, this information was presented and argued at the detention hearing.

Because Defendant has not met her burden to reopen the detention hearing under Section 3142(f), the Court should deny the motion on the papers and without a hearing.

- **Court should be concerned with the period of incarceration Defendant is facing.**

Defendant argues that because a lengthy period of incarceration is a factor "that is common in almost every case before this court", the Court should view that as a neutral factor when weighing the 3142(g) factors. Again, this was an issue that was discussed during the detention hearing, there are no new facts now known to Defendant that were unknown to her at the time of the detention that would be material to release conditions regarding flight to reopen the detention hearing. Therefore, Defendant has not met her burden to reopen the detention hearing under Section 3142(f), and the Court should deny the motion on the papers and without a hearing.

- **Court's concern with Defendant' criminal history outweighs the factors in favor of release.**

Defendant argues that her conduct while on pretrial supervision in her bulk cash smuggling case demonstrates her ability to abide by conditions of release and judicial orders. In fact, she argues that during that year that she was on pretrial supervision, pretrial services did not file any petitions of noncompliance against her, did not have any failures to appear to hearings, and also timely self-surrendered to her designated prison to serve her custodial sentence. However, this is neither new information that did not exist at

Defendant's detention hearing. In fact, this same argument was made and addressed at the detention hearing when Defendant agued that,

> ". . . as it pertains to the prior case, her Pretrial Release conduct was perfect. There are no allegations of violations. There were no violations. She did exactly what the Court ordered. . . So, therefore, I think that the fact that she on [*sic*] Pretrial release did everything she was asked to do I think should in fact weigh in favor of setting bond in this case."

Ex. 1 at 9:3-13.

Also, what Defendant ignores is the fact that Defendant brazenly committed the alleged conduct while serving her custodial sentence for that bulk cash smuggling case. In fact, within two days of self-surrendering is when Defendant Pasillas immediately began seeing Medicare beneficiaries and providing them with medical services while having no medical license to do so. Proof of Defendant Pasillas providing those medical services was actually sent via email by Defendant Pasillas to Defendant Cardenas' email, as well as other staff at Defendant Cardenas' business, on April 26, 2024, only two days after Defendant self-surrendered. Therefore, almost immediately upon self-surrendering, Defendant Cardenas and her daughter began their conspiracy, which they continued throughout the six months of Defendant Cardenas' incarceration.

Because Defendant has not met her burden to reopen the detention hearing under Section 3142(f), the Court should deny the motion on the papers and without a hearing.

- **Court's consideration of Defendant being on supervision during the current offense/arrest did not give it undue weight in ordering detention.**

Defendant suggests that the Court gave undue weight to the issue of whether Defendant would face violation proceedings in her prior bulk cash smuggling case due to the conduct alleged in the indictment in this case. While the Pretrial Services bail review packet indicated that "Probation will be initiating violation proceedings," it is clear that the parties' discussed this issue during the detention hearing, and that this did not serve as a

basis of the Court's order of detention. Ex. 1 at 3:25; 4:1; 6:23-25; 7:1-4; 7:22-25; 8:1-6; 17:24-25; 18:1-4. Specifically, during the detention hearing, the Court stated that,

> "Without knowing more, it is difficult to know how much weight to give that. I'll simply note that fact for the record. I will not give that undue weight because we do not know very much about the sophistication or the quality of the evidence supporting those alleged violations.

Ex. 1 at 17:24-25; 18:1-4.

Additionally, in rendering its order of detention, the Court did not include the allegation of initiating violation proceedings as a basis for its decision. Ex. 1 at 17:24-25; 18:1-25.

Further, the fact that Probation Officer Michael Cortez has confirmed that he will *not* be seeking violation proceedings because the conduct predated the commencement of Defendant's supervision should not move the needle for the Court to reconsider its order of detention. In fact, during the detention hearing, Defendant strongly argued that given that the conduct alleged in the indictment occurred during the time that Defendant was in custody, which predated supervised release, a violation would not have occurred. Therefore, this is not a new issue that was not addressed during the detention order, and as indicated above, the Court did not use it as a basis for it order of detention. Ex. 1 at 7:24-25; 18:1-4.

On the other hand, as listed in the factors under 3142(g)(B), the Court "*shall"* take into account "whether, at the time of the current offense, or **arrest,** the person was on probation. . ." (Emphasis supplied). The fact is undisputed that at the time of Defendant's arrest, Defendant was on probation.

Additionally, Defendant further argues that when the government executed the search warrant on her house, that she learned that the agents had arrested her daughter, and also learned that there was a warrant for her arrest too, while she was in Mexico. She further states that she "immediately contacted her probation officer. . . She also made the conscious decision to purchase a plane ticket to return to the United States that same day." Undersigned counsel spoke with Probation Officer Michael Cortez on August 3, 2026, and

confirmed that the Defendant did *not* contact him; in fact, it was Mr. Cortez who called Defendant and asked her to report to him at Probation Services upon her arrival to Mexico. At no time did Defendant share anything with Mr. Cortez about a search warrant being executed at her house; her knowledge of an outstanding arrest warrant for herself; her daughter being arrested that day; the fact that she was going to be self-surrendering; or anything related to the underlying matter. Instead, they simply agreed that when she returned back from Mexico, she would report to probation. Nevertheless, again, this is an issue that was argued by Defendant at the detention hearing. Therefore, because Defendant has not met her burden to reopen the detention hearing under Section 3142(f), the Court should deny the motion on the papers and without a hearing.

- **The Court did not discuss a concern with the charge involving dishonest conduct, false statements, or fraud.**

Defendant argues that the fact that the charge of health care fraud alleged against the defendant involves dishonest conduct, false statement or fraud goes against the weight of the evidence which the court may consider, although it's the least important factor in the 3142(g) analysis. At no point during the hearing did the Court discuss or use as a basis for its decision the fact that the alleged charge of health care fraud against the defendant involves dishonest conduct, false statement, or fraud. Instead, the court made it clear that it was concerning that Defendant is:

> "looking at two major charges in a very short period of time. She is charged with bulk cash smuggling in 2023 and she's now facing very serious charges in a very short period of time here in 2026, so two major charges within three years. . ."

Ex. 1 at 13:22-25; 14:1-2.

And in ultimately ordering detention, the Court made it abundantly clear that he was very troubled and concerned about the recency of the two criminal charges the Defendant was facing in a very short period. Ex. 1 at 18:5-25.

**B. Defendant Still Presents a Serious Risk of Flight**

If the Court determines that there is new and material information bearing on the risk of flight to reopen the detention hearing, the Court should nevertheless deny the motion as the United States can still show, by a preponderance of the evidence, that Defendant presents a serious risk of flight and no condition or combination of conditions will reasonably assure Defendant's appearance as required. *See* 18 U.S.C. § 3142(f).

First, as to the nature and circumstances of the offenses, this is a very serious case. As set forth above, Defendant brazenly conspired with her daughter to fraudulently bill Medicare in excess of $9.5 million for services that Defendant claimed that she provided to Medicare beneficiaries while she was serving her prior federal custodial sentence. Instead, her daughter, co-defendant Pasillas, who has no medical license, provided the services to the Medicare beneficiaries. Every single claim submitted to Medicare by Defendants during those six months, contained Defendant Cardenas' name listed as the rendering provider, together with her unique NPI number, claiming that Defendant Cardenas provided the medical services, causing Medicare to pay in excess of $4.5 million in just six months.

Defendant's projected sentencing range at trial is actually higher than the 57-71 months that was proffered at the detention hearing. The low end of the guidelines range is actually 97 months with enhancements for intended loss, abuse of position of trust, and loss over $7 million to a government health care program. Below are the calculated guidelines, without acceptance of responsibility, and assuming Criminal History Category II given Defendant's bulk cash smuggling. This factor weighs in favor of detention.

| | | |
|---|---|---|
| Base Offense Level | 2B1.1(a)(2) | 6 |
| Intended Loss (Between $5 million and $15 million) | 2B1.1(b)(1)(J) | +18 |
| Loss over $7 million to Govt Health Care Program | 2B.1.1(b)(7)(ii) | + 3 |
| Abuse of Position of Trust | | + 2 |
| Total Anticipated Offense Level | | 29 |
| Sentencing Range (Cardenas), assuming CHC II (Cardenas) | | 97–121 months |

Second, as to the weight of the evidence, while the least important factor, the strength of the evidence is evident here. The United States intends to present various documentary and testimonial evidence at trial, including bank records, company records, medical records, jail calls, emails, and other evidence that will prove the Defendant conspired with her daughter to fraudulently bill Medicare in excess of $9.5 million for medical services claiming that Defendant Cardenas purportedly provided the services while she was in federal custody. Instead, it was her daughter, co-defendant Pasillas, who has no medical license, who provided the services to the Medicare beneficiaries. The evidence will further show that during the six months that Defendant Cardenas was in federal custody she received direct deposits into her personal bank account from the business bank accounts where the Medicare monies were deposited into, in the amounts of $10,000 to $20,000 monthly. The United States also detailed some of the evidence at the detention hearing. This factor too weighs in favor of detention.

Third, as to Defendant's history and characteristics, the United States acknowledged at the detention hearing that Defendant has ties to the United States. Ex. 1 at 4:13-15. However, as stated in Section 3142(g), in assessing this factor, the Court "shall" consider "[defendant]'s character" and "past conduct" in deciding if there are conditions of release that will reasonably assure Defendant's appearance as required. Defendant's character and past conduct is very troubling. Namely, Defendant's prior bulk cash smuggling conviction in 2024 where she received a custodial sentence of 12 months and 1 day, is very troubling. Specifically, as noted by the Court during the detention hearing, it is very troubling that Defendant, in such a short period of time—between 2024 when she was convicted of bulk cash smuggling—to the date of her arrest—June 2026, she finds herself with two very recent and very serious charges. Additionally, the fact that Defendant committed the instant offense while in federal custody speaks volumes to the brazen nature of Defendant's conduct and her callous disregard for the law. Accordingly, the United States has met its burden to show by a preponderance of the evidence that Defendant still presents a serious risk of flight, and the Court should deny the motion.

## V. **CONCLUSION**

For the reasons detailed above, as well as those presented at the detention hearing, the Court should deny Defendant's motion for reconsideration of its detention order.

DATE: August 5, 2026

Respectfully submitted,

ADAM GORDON
United States Attorney

*/s Blanca Quintero*
BLANCA QUINTERO
Assistant U.S. Attorney